UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Maureen McPadden,
      Plaintiff

      v.                              Case No. 14-cv-475-SM
                                      Opinion No. 2016 DNH 160
Wal-Mart Stores East, L.P.,
      Defendant

**O R D E R**

Maureen McPadden brought suit against her former employer,
Wal-Mart Stores East, L.P. ("Walmart"), advancing numerous state
and federal workplace discrimination claims.  Following a five-
day trial, a jury found in favor of McPadden on four of those
claims and awarded her more than $31.2 million in compensatory,
enhanced compensatory, and punitive damages.  Walmart moves for
judgment as a matter of law on all claims or, in the
alternative, seeks a new trial.  See Fed. R. Civ. P. 50(b) and
59.  Should those motions be denied, Walmart moves for
remittitur.  McPadden objects.

For the reasons discussed, Walmart's motion for judgment as
a matter of law or, in the alternative, a new trial is denied.
Its motion for remittitur of the jury's award of compensatory
damages is denied, while its motion to remit the jury's award of

punitive damages and enhanced compensatory damages is denied
without prejudice to refiling after the New Hampshire Supreme
Court has answered the certified questions this court proposes
to submit to it.  Finally, the jury's advisory verdict on
plaintiff's front pay claim is not accepted, and the court
enters a substantially reduced front pay award.

## Standard of Review

As our Court of Appeals has observed, "[a] party seeking to
overturn a jury verdict faces an uphill battle." Marcano Rivera
v. Turabo Med. Ctr. P'ship, 415 F.3d 162, 167 (1st Cir. 2005).
To prevail on a motion for judgment as a matter of law under
Rule 50, the moving party must demonstrate that "the evidence
points so strongly and overwhelmingly in favor of the moving
party that no reasonable jury could have returned a verdict
adverse to that party." Keisling v. SER-Jobs for Progress,
Inc., 19 F.3d 755, 759-60 (1st Cir. 1994).  Under Rule 59, "[a]
district court may set aside the jury's verdict and order a new
trial only if the verdict is against the law, against the weight
of the credible evidence, or tantamount to a miscarriage of
justice." Casillas-Diaz v. Palau, 463 F.3d 77, 81 (1st Cir.
2006). See also Jones ex rel. United States v. Mass. Gen.
Hosp., 780 F.3d 479, 492 (1st Cir. 2015) ("A new trial may be
warranted if the verdict is against the weight of the evidence

2

or if the action is required in order to prevent injustice.")
(citations and internal punctuation omitted).

Finally, the court may, in its discretion, impose a
remittitur when it is persuaded that the jury's damage award
"exceeds any rational appraisal or estimate of the damages that
could be based upon the evidence before it," Wortley v. Camplin,
333 F.3d 284, 297 (1st Cir. 2003), or when the evidence
supporting the jury's award is "so thin" that the award is
"vastly out of proportion" to the maximum recovery for which
there is evidentiary support, Trainor v. HEI Hospitality, LLC,
699 F.3d 19, 32 (1st Cir. 2012).  Moreover, the court of appeals
has held that, "[i]n cases of noneconomic injury, such as
emotional distress, remittitur requires further finding that the
award is so grossly disproportionate to any injury established
by the evidence as to be unconscionable as a matter of law."
Climent-Garcia v. Autoridad de Transporte Maritimo y Las Islas
Municipio, 754 F.3d 17, 21 n.1 (1st Cir. 2014) (citations and
internal punctuation omitted).

## Discussion

Maureen McPadden had been a long-term employee of Walmart,
where she worked as a licensed pharmacist at various stores,
including locations in Maine, Massachusetts, and New Hampshire.

In 2010, she began working at the Walmart pharmacy in Seabrook, New Hampshire.  As an employee of the Seabrook store, McPadden had a minor, but unremarkable disciplinary history.  Her performance evaluations were generally satisfactory, but equally unremarkable.  According to Walmart, when McPadden lost a key to the pharmacy she had been issued, it decided that lapse, in light of her disciplinary history, warranted her discharge. And, says Walmart, that is the only reason her employment was terminated.

The jury rejected Walmart's proffered explanation for its decision to fire McPadden and concluded, instead, that Walmart had been motivated by unlawful gender-based discrimination.  The jury also concluded that Walmart retaliated against McPadden for reporting what she honestly believed were serious violations of the Health Insurance Portability and Accountability Act (also known as "HIPAA") and/or for complaining about prescription errors and safety issues related to staffing deficiencies. Accordingly, the jury found in favor of McPadden on her gender discrimination claims (under both Title VII and New Hampshire's Law Against Discrimination), her New Hampshire retaliation/ whistleblower claim arising out of her reports of alleged HIPAA violations and safety issues, and her state common law wrongful discharge claim.

To say the jury was generous in awarding damages would substantially understate the magnitude of its award – particularly given that McPadden presented a case of gender discrimination and wrongful termination that, while viable, was not particularly dramatic or severe when compared to the norm. Indeed, after hearing all the evidence, the court noted that, "I certainly don't see this as a particularly strong case.  In fact, I think it's probably the weakest case that I can remember ever sending to a jury."  Trial Transcript, Day 5, Vol. 1, at 18.  Nevertheless, the jury, as was its prerogative, saw it differently and awarded McPadden damages as follows:

| | |
|---|---|
| Back Pay (all claims) | $ 164,093.00 |
| Front Pay (all claims) | $ 558,392.87 |
| Compensatory Damages (all claims) | $ 500,000.00 |
| Punitive Damages (Title VII) | $ 15,000,000.00 |
| Enhanced Compensatory Damages (state gender discrimination) | $ 15,000,000.00 |
| **Total Award:** | **$ 31,222,485.87** |

Because Title VII imposes a cap on McPadden's recovery of compensatory and punitive damages, the court reduced the jury's award of punitive damages to $300,000.00.  See 42 U.S.C. § 1981a(b)(3)(D).  See also Judgment (document no. 140).  It should also be noted that the court held that any award of

enhanced compensatory damages, as well as any recovery for front pay, were committed to the court's discretion.  See Transcript, Day 5, Vol. 1, at 158.  Accordingly, both parties were informed that the court was presenting those matters to the jury on an advisory basis.

I.   Judgment as a Matter of Law and/or New Trial.

Turning first to Walmart's motion for judgment as a matter of law or, in the alternative, for a new trial, that motion is denied.  Having reviewed the trial transcripts, as well as the arguments advanced by the parties, the court concludes that there was sufficient evidence – though a close call – to permit a reasonable jury to conclude that Walmart's decision to terminate McPadden's employment was the product of unlawful gender-based discrimination.  Moreover, while the court perceived McPadden's gender-based discrimination claims as weak (but sufficient), her retaliation claim was decidedly more substantial, and there was ample evidence to support the jury's conclusion that Walmart fired McPadden in retaliation for her having reported staffing deficiencies, prescription-filling errors, and safety concerns to the New Hampshire Board of Pharmacy, as well as for having voiced her concerns about HIPAA violations.

McPadden's memoranda more than adequately lay out the evidence upon which a reasonable jury could have found sufficient facts to support her liability theories by a preponderance.  That evidence need not be recounted here.  It is sufficient to note that Walmart has not borne the heavy burden of demonstrating that the evidence points so strongly, so overwhelmingly, in its favor that no reasonable jury could have returned a verdict adverse to it.  Nor has it shown that the jury's verdict is against the weight of the evidence or that a new trial is required in order to prevent an injustice.  The jury plainly credited McPadden and her witnesses and sustainably concluded that Walmart's decision to fire her was unlawful.

II.  <u>Remittitur</u>.

<u>Compensatory Damages</u>.  The jury's award of $500,000.00 in compensatory damages was, without question, generous.  But, to persuade the court that it should remit those damages, Walmart bears another heavy burden: it must demonstrate that the jury's award is "grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand."  <u>Koster v. Trans World Airlines, Inc.</u>, 181 F.3d 24, 34 (1st Cir. 1999) (<u>quoting</u> <u>Havinga v. Crowley Towing & Transp. Co.</u>, 24 F.3d 1480, 1484 (1st Cir. 1994)).  Put slightly differently, this court will not disturb a

jury's award unless "it is so grossly disproportionate to any injury established by the evidence as to be unconscionable as a matter of law." Koster, 181 F.3d at 34. See also Munoz v. Sociedad Espanola De Auxilio Mutuo y Beneficiencia De Puerto Rico, 671 F.3d 49, 61-62 (1st Cir. 2012) (holding that the court "will not disturb an award of damages because it is extremely generous or because we think the damages are considerably less. Rather, we will only reverse an award if it is so grossly disproportionate to any injury established by the evidence as to be unconscionable as a matter of law") (citations an internal punctuation omitted).

Here, while the jury's award of $500,000 was undeniably substantial, it cannot be said that it was grossly disproportionate to McPadden's emotional injuries or her mental suffering.  Nor would it be unconscionable as a matter of law to permit it to stand.  Perhaps the strongest evidence of McPadden's serious emotional damages came from Kevin McDevitt, her former boyfriend.  See Trial Transcript, Day 4, Vol. 2, at 61-72.  Mr. McDevitt testified that, immediately after she lost her job, McPadden was distraught, had lost her self-esteem, was having difficulty sleeping, and gained weight.  Because she had lost her only source of income, McPadden struggled to pay her bills, lost her sense of independence (in part because she had

to rely on McDevitt and her mother for financial support),
worried about her credit rating, worried about finding
professional employment given her age, and was eventually forced
to sell her home.  McDevitt also described McPadden's search for
employment as grueling and involving months of interviews.  And,
even after she secured employment with CVS as a "floater
pharmacist," her schedule was uncertain and frequently involved
substantial travel - all of which exacerbated her existing
mental health issues.  See generally Testimony of Dr. Robert
Howe, Trial Transcript, Day 2, Vol. 2, at 3-60.


      In light of the evidence adduced at trial, the court cannot
conclude that the jury's award - while undeniably generous - was
"so grossly disproportionate to any injury established by the
evidence as to be unconscionable as a matter of law."  Koster,
181 F.3d at 34.  See also Tobin v. Liberty Mutual Ins. Co., 553
F.3d 121, 144-45 (1st Cir. 2009) (affirming trial court's
refusal to remit $500,000 jury award for emotional damages).


      Punitive Damages.  As noted above, the jury's award of $15
million in punitive damages was reduced, by operation of law, to
the maximum amount permitted by statute: $300,000.  See 42
U.S.C. § 1981a(b)(3)(D).  Walmart advances a reasonably
persuasive argument that the court should now remit that award

9

to zero, asserting that McPadden introduced insufficient evidence to support the conclusion that Walmart's agents (in particular, Joseph Certo) acted with the requisite malice or reckless indifference to McPadden's federally protected rights. See generally McDonough v. City of Quincy, 452 F.3d 8, 23 (1st Cir. 2006) ("[A] finding of intentional discrimination, which is the basis for a compensatory damages award, does not by itself establish a basis for awarding punitive damages. Rather, the plaintiff must make the additional showing that the employer acted with malice or reckless indifference to federally protected rights.") (citing Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 534-36 (1999)).

But, at this stage of the proceedings, it seems premature to address Walmart's argument (and McPadden's response) in detail. As discussed below, the court proposes (and the parties both agree) to certify to the New Hampshire Supreme Court several questions of law relating to the availability of statutory enhanced compensatory damages in this case (which may be distinct from common law enhanced compensatory damages) and, if such damages are available, the nature of plaintiff's burden to establish her entitlement to them. The Supreme Court's resolution of those questions might note some overlap between federal punitive damages and state statutory enhanced

compensatory damages which, in turn, would likely affect the total amount of punitive and enhanced compensatory damages, if any, to which plaintiff is entitled (by implicating the policy that plaintiff may not recover double damages and by clarifying the necessary predicate to entitlement).

Consequently, the court will defer ruling on Walmart's motion to remit the jury's punitive damages award until after the New Hampshire Supreme Court has resolved the issues raised in the questions to be certified.  That approach is prudential and conserves judicial resources, and insures that all relevant factors can be fully considered before the matter of additional damages - of whatever origins - is resolved.

III. <u>Damages Reserved to the Court</u>.

<u>Front Pay</u>.  When reinstatement is not available or practicable, an award of front pay is committed to the court's discretion.  <u>See</u> <u>generally</u> <u>Johnson v. Spencer Press of Maine, Inc.</u>, 364 F.3d 368, 380 (1st Cir. 2004).  And, as noted above, that issue was presented to the jury on an advisory basis.  The jury's advisory verdict awarded McPadden $558,392.87 in front pay.

Following her discharge from Walmart, McPadden sought and eventually obtained alternate professional employment as a licensed pharmacist – albeit on a part-time basis – at a CVS pharmacy.  Her economics expert testified that in her part-time position, McPadden earned $37,197.00 less each year than she had been earning while employed at Walmart.  Trial Transcript, Day 4, Vol. 2, at 34.  Assuming the jury accepted that testimony, its advisory award of front pay covers a span of approximately 15.5 years.  When McPadden was fired, she was 47 years old.  So, the jury's advisory award would compensate her through the age of 62 – consistent with McPadden's testimony that she planned to work at Walmart until her retirement.

As the court of appeals has recognized, any award of front pay is necessarily speculative, since it represents an estimate of what the successful plaintiff might have earned had he or she simply been reinstated at the close of trial.  Cummings v. Standard Register Co., 265 F.3d 56, 66 (1st Cir. 2001).  When awarded, front pay is intended to be temporary in nature; its purpose is simply to compensate a prevailing plaintiff until she is able to obtain comparable employment elsewhere.  See, e.g., Selgas v. American Airlines, Inc., 104 F.3d 9, 12 (1st Cir. 1997).  Consequently, should a court determine that an award of front pay is warranted, it must take into consideration the

12

plaintiff's obligation to mitigate damages by seeking alternate employment.  See, e.g., Rodriguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 67 (1st Cir. 2005).  The court may also consider how well or thoroughly the jury compensated the plaintiff for her injuries in its award of compensatory damages and back pay.  See, e.g., Carey v. Mt. Desert Island Hosp., 156 F.3d 31, 41 (1st Cir. 1998) (noting that the trial court's determination that compensatory damages and back pay were fully sufficient to compensate the plaintiff was, standing alone, sufficient to support its decision to refuse to award front pay); Webber v. Int'l Paper Co., 307 F. Supp. 2d 119, 129 (D. Me. 2004) (declining to award front pay because the jury's award of compensatory damages and back pay "more than adequately compensated [the plaintiff] for his injury").  Finally, an award of front pay that "extends over many years to an estimated retirement date should be examined carefully, . . . since the greater the period of time upon which a front pay award is calculated in a case involving an at-will employee the less likely it is that the loss of future earnings can be demonstrated with any degree of certainty or can reasonably be attributed to the illegal conduct of the employer." Cummings, 265 F.3d at 66 (citation and internal punctuation omitted).

Here, taking into consideration all of those factors, including the generous compensatory damages award, as well as McPadden's relatively young age, her educational background, her health, and her unchallenged professional competence – all of which favorably affect her ability to secure comparable professional employment in the future – the court concludes that an award of front pay in the amount of $111,591.00 is near the outer boundary of reasonableness in this case.  That figure represents three years of front pay, based upon McPadden's expert's testimony (that she is currently earning $37,197.00 less per year at CVS than she earned at Walmart).  Three years is more than adequate time for a person of McPadden's age, skill, and training to obtain a pharmacist position at a salary and with benefits comparable to those she received at Walmart.

Enhanced Compensatory Damages.  Even viewing the evidence presented, and all reasonable inferences to be drawn from that evidence, in the light most favorable to McPadden, the jury's advisory award of $15 million in enhanced compensatory damages is plainly excessive.  In this case, an enhanced compensatory damages award in that amount simply cannot be reconciled with the demands of the Due Process Clause of the Fourteenth Amendment.  See, e.g., State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416 (2003); BMW of N. Am., Inc. v. Gore,

14

517 U.S. 559, 568 (1996).  But, before determining how much, if any, enhanced compensatory damages McPadden should receive, the court must resolve a more fundamental question: whether, under N.H. Rev. Stat. Ann. ("RSA") 354-A:21-a, enhanced compensatory damages in any amount are available in this case.  That statute provides, in relevant part, as follows:

> Any party alleging to be aggrieved by any practice made unlawful under this chapter may, at the expiration of 180 days after the timely filing of a complaint with the commission, or sooner if the commission assents in writing, but not later than 3 years after the alleged unlawful practice occurred, <u>bring a civil action</u> for damages or injunctive relief or both, in the superior court for the county in which the alleged unlawful practice occurred or in the county of residence of the party.  Any party alleged to have committed any practice made unlawful under this chapter may, in <u>any case in which a determination of probable cause has been made</u> by the investigating commissioner, <u>remove</u> said complaint to superior court for trial.  A court in cases <u>so removed</u> may award all damages and relief which could have been awarded by the commission, except that <u>in lieu of an administrative fine, enhanced compensatory damages may be awarded</u> when the court finds the respondent's discriminatory conduct to have been taken with willful or reckless disregard of the charging party's rights under this chapter.

RSA 354-A:21-a I (emphasis supplied).


Walmart asserts, not implausibly, that the plain language of the statute compels the conclusion that enhanced compensatory damages are not available in this case.  Pointing to the

statutory language, Walmart notes that the first sentence speaks to a plaintiff's ability to "bring" a civil action after timely submitting a complaint to the New Hampshire Commission on Human Rights.  The second sentence speaks to a defendant's ability to "remove" any case in which a determination of probable cause has been made by the investigating commissioner.  Finally, the third sentence provides that "in cases so removed," enhanced compensatory damages may be awarded, in the court's discretion. The statute authorizes enhanced compensatory damages, Walmart says, only in a very specific set of circumstances – circumstances that are not present in this case, since Walmart did not "remove" plaintiff's administrative case to court. Rather, plaintiff chose to "bring" her action in this court.

Walmart's literal reading of RSA 354-A:21-a is neither patently unreasonable nor absurd.  See generally Great Traditions Home Builders, Inc. v. O'Connor, 157 N.H. 387, 388 (2008) (noting that the court will not interpret statutory language in a literal manner if such a reading would lead to an absurd result).  Chapter 354-A embodies a legislative preference for the administrative resolution of employment discrimination claims.  It would, then, be at least rational for the legislature to have authorized plaintiffs to "bring" an action in court, but to limit the relief available to the same remedies

16

available before the Commission (thereby avoiding the creation
of incentives for a plaintiff to abandon the administrative
realm).  And, other potential legal objections aside for the
moment, it would also be rational for the legislature to subject
defendants who choose to "remove" cases to court after a
probable cause finding (essentially seeking a judicial "do-over"
of that adverse finding) to the possibility of additional
damages.  In such cases, the legislature might well have
concluded that the threat of enhanced compensatory damages would
suffice to ensure that only defendants with a legitimate defense
on the merits would choose to remove a case to court after an
administrative probable cause finding.

     McPadden, on the other hand, says the statutory language at
issue must be construed more broadly and liberally, in a manner
consistent with its legislative history, historical amendments
to the statute, and the enabling administrative regulations.
Indeed, the statute itself provides that the "provisions of this
chapter shall be construed liberally for the accomplishment of
the purposes thereof."  RSA 354-A:25.  McPadden's position is
also reasonable, and is, perhaps, more compatible with the
legislature's general intent, as expressed in the statute's
legislative history.  The problem with McPadden's approach to
statutory construction is this: the factors upon which McPadden

would have the court rely are only invoked when the statutory language at issue is ambiguous.  See, e.g., U.S. Equal Employment Opportunity Comm'n v. Fred Fuller Oil Co., Inc., 134 A.3d 17, 19 (N.H. 2016) ("When a statute's language is plain and unambiguous, we need not look beyond it for further indication of legislative intent, and we decline to consider what the legislature might have said or to add language that the legislature did not see fit to incorporate in the statute.") (citations and internal punctuation omitted); Petition of Malisos, 166 N.H. 726, 729 (2014) ("We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning.  We interpret legislative intent from the statute as written, and will not consider what the legislature might have said or add language that the legislature did not see fit to include.  When the language of a statute is plain and unambiguous, we need not look beyond the statute itself for further indications of legislative intent.") (citations omitted); Forster v. Town of Henniker, 167 N.H. 745, 750 (2015) ("Unless we find statutory language to be ambiguous, we will not examine legislative history.").

The language of RSA 354-A:21-a I provokes other questions of some significance as well.  For example, while the statute

provides that "the court" may award enhanced compensatory damages when it finds that the defendant's discriminatory conduct was willful or undertaken with a reckless disregard of the plaintiff's rights, McPadden asserts that it is the jury (in a jury trial), not the judge, that decides whether to award enhanced compensatory damages and, if so, how much.

Additionally, the burden imposed upon a plaintiff to show entitlement to enhanced compensatory damages under RSA 354-A:21-a (i.e., "willful or reckless disregard of the charging party's rights") appears to be substantially lighter than the burden imposed upon a plaintiff seeking enhanced compensatory damages under New Hampshire's common law (i.e., "ill will, hatred, hostility, or evil motive on the part of the defendant," Stewart v. Bader, 154 N.H. 75, 87 (2006), or "wanton, malicious, or oppressive" conduct by the defendant, Figlioli v. R.J. Moreau Companies, Inc., 151 N.H. 618, 621 (2005)). Indeed, rather than embracing the familiar and rigorous common law standard, the New Hampshire General Court seems to have adopted language very similar to that used in federal statutes when describing a plaintiff's burden to establish entitlement to punitive damages. See, e.g., 42 U.S.C. § 1981a(b)(1) ("A complaining party may recover punitive damages under this section against a respondent . . . if the complaining party demonstrates that the respondent

19

engaged in a discriminatory practice or discriminatory practices
with malice or with reckless indifference to the federally
protected rights of an aggrieved individual.") (emphasis
supplied).  Given the difference in language used to describe
the relative burdens, and given the legislative history
(suggesting that the statutory provision was enacted in part to
assuage federal demands — upon which federal funding depended —
for a punitive damages remedy), it is unclear whether "enhanced
compensatory damages" are available under RSA 354-A:21-a
whenever a plaintiff shows that a defendant has acted willfully
or with a reckless disregard for the plaintiff's rights, or
whether, as is the case under the common law, such damages are
"awarded only in exceptional cases," Figlioli, 151 N.H. at 621,
when there is ill will, hatred, hostility, or evil motive on
that part of the defendant, or wanton, malicious, or oppressive
conduct by the defendant.  See generally Munson v. Raudonis, 118
N.H. 474, 479 (1978).

     Those issues present open questions of New Hampshire law,
and reasonable minds can certainly differ with respect to the
proper construction of RSA 354-A:21-a.  And, resolution of those
questions of statutory construction is of critical importance to
the parties, as McPadden's ability to recover, and Walmart's
obligation to pay, enhanced compensatory damages in any amount

turns on the answers.  Moreover, those issues have been
presented to this court before, see, e.g., Equal Employment
Opportunity Commission v. Fred Fuller Oil Co., No. 13-cv-295-PB,
document no. 30 (request for jury instructions), and will likely
arise again in the future.  Consequently, the court concludes
that the wise course is to seek an authoritative construction of
the state statute from the final arbiter of such matters, the
New Hampshire Supreme Court.

    As this court has noted in the past, when a federal court
is called upon to apply state law, it must "take state law as it
finds it: not as it might conceivably be, some day; nor even as
it should be." Sisson v. Jankowski, 2002 WL 122380 at * 6, No.
00-cv-479-M (D.N.H. Jan. 29, 2002) (quoting Kassel v. Gannett
Co., 875 F.2d 935, 950 (1st Cir. 1989)).  When state law has
been authoritatively interpreted by New Hampshire's highest
court, this court's role is straightforward: it must apply that
law according to its tenor.  See Kassel, 875 F.2d at 950.  When
the signposts are somewhat blurred, the federal court may assume
that the state court would adopt an interpretation of state law
that is consistent with logic and supported by reasoned
authority.  See Moores v. Greenberg, 834 F.2d 1105, 1107 n.3
(1st Cir. 1987).  However, this court is (and should be)
hesitant to blaze new, previously uncharted state-law trails.

Accordingly, when a critical legal question is novel and the
state's law in the area is unsettled, certification is often
appropriate.  See Lehman Bros. v. Schein, 416 U.S. 386, 391
(1974); Arizonans for Official English v. Arizona, 520 U.S. 43,
76 (1997).  See also Acadia Ins. Co. v. McNeil, 116 F.3d 599,
605 (1st Cir. 1997).


        Expansive reading of New Hampshire's statutory law,
particularly when that law implicates substantial public policy
concerns, is a realm best governed by the New Hampshire Supreme
Court.  Because that court has yet to directly address the
discrete questions of statutory interpretation presented in this
case, and because it is unclear how it would likely resolve
those issues in the context of these facts, the fairest and most
prudent course of action at this stage is to certify the
questions.  Otherwise, this court might erroneously deny
McPadden damages to which she is entitled, or impose damages
upon Walmart for which it is not liable.


        Accordingly, by separate order, the court will advise the
parties of the questions it proposes to certify to the New
Hampshire Supreme Court concerning the circumstances under which
enhanced compensatory damages are available under RSA 354-A:21-
a, and solicit their comments.

**Conclusion**

For the foregoing reasons, Walmart's motion for judgment as a matter of law or for a new trial or, in the alternative, for remittitur (document no. 158) is granted in part, denied in part, and denied without prejudice in part, as follows:

    (1)  Walmart's motion for judgment as a matter of law is denied;

    (2)  Walmart's motion for a new trial is denied;

    (3)  Walmart's motion to remit the jury's award of compensatory damages is denied;

    (4)  Walmart's motion to remit the jury's award of punitive damages and its advisory award of enhanced compensatory damages is denied without prejudice to refiling after the New Hampshire Supreme Court has answered the certified questions this court proposes to submit to it; and

    (5)  The jury's advisory verdict on an award of front pay is not accepted, and the court instead awards McPadden the sum of $111,591.00 as front pay.

After the New Hampshire Supreme Court has authoritatively construed the provisions of RSA 354-A:21-a, this court will, if necessary, revisit the issue of enhanced compensatory damages. Within 21 days of the New Hampshire Supreme Court's opinion, Walmart may submit a renewed motion to remit the jury's award of punitive damages and, to the extent they are not resolved by the New Hampshire Supreme Court, any arguments it wishes to raise concerning the jury's advisory award of enhanced compensatory

damages.  McPadden may file an objection within 21 days after the filing of Walmart's motion.


        **SO ORDERED.**

                                           _____
                                         Steven J. McAuliffe
                                         United States District Judge

September 16, 2016

cc:  Richard E. Fradette, Esq.
     Robert S. Mantell, Esq.
     Holly A. Stevens, Esq.
     Lauren S. Irwin, Esq.
     Joseph A. Lazazzero, Esq.
     Christopher B. Kaczmarek, Esq.