UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Maureen McPadden,
 Plaintiff

 v.              Case No. 14-cv-475-SM
                Opinion No. 2017 DNH 002
Wal-Mart Stores East, L.P.,
 Defendant

## O R D E R

Following a five-day trial, a jury found in favor of Maureen McPadden and against her former employer, Walmart, on four state and federal workplace discrimination claims: gender discrimination in violation of both Title VII and New Hampshire's Law Against Discrimination; unlawful retaliation in response to McPadden's having reported perceived workplace safety issues; and common law wrongful termination.  The jury awarded McPadden $31.2 million in compensatory, enhanced compensatory, punitive, back pay, and front pay damages.  While the jury's verdict on liability was supportable, its total award of damages was, to say the least, startling.  Walmart moved for judgment as a matter of law on all claims or, in the alternative, for a new trial.  Should those motions be denied, Walmart sought remittitur of the jury's awards of front pay,

compensatory damages, punitive damages, and enhanced compensatory damages.

The court denied Walmart's motions for judgment as a matter of law and for a new trial. See First Post-Trial Order, dated September 16, 2016 (document no. 186). As for Walmart's motion seeking remittitur, the court held that although the jury's award of $500,000 in compensatory damages was "undeniably generous," it was not so grossly disproportionate to any injury established by the evidence as to be unconscionable as a matter of law. Id. at 9. Accordingly, the court allowed that aspect of the jury's award to stand. With respect to Walmart's motion to remit the jury's award of $15 million in enhanced compensatory damages, as well as the jury's (statutorily-reduced) award of $300,000 in punitive damages,[1] the court deferred any ruling pending certification of several questions of controlling state law regarding enhanced compensatory damages to the New Hampshire Supreme Court.

Finally, as to the jury's award of more than one-half million dollars in front pay, the court concluded that

---

[1]  Pursuant to 42 U.S.C. § 1981a(b)(3)(D), the court reduced the jury's award of punitive damages from $15 million to $300,000.00.

2

"remittitur," as such, was neither necessary nor appropriate. At the charging conference (prior to instructing the jury), the court informed the parties that the question of whether to award front pay (and, if so, in what amount) was an equitable issue reserved to the court. The court did, however, agree to give the issue to the jury on an advisory basis. Consequently, after the jury returned its verdict, there was no need to "remit" its advisory award of front pay - that was, after all, an issue the court had very clearly stated was one for it to resolve.[2]

So, the court considered the jury's advisory verdict and the evidence presented, as well as the jury's exceedingly

---

[2] McPadden says she believed the court was seeking an advisory verdict on front pay only as to her Title VII claims. And, to be sure, a review of the transcript does disclose that during a final discussion of the instructions outside the presence of the jury, the court mentioned, in passing, Title VII, but not the other state liability theories for which front pay was sought:

> Court: . . . And with respect to a front pay award, any front pay award under Title VII, I believe that's the province of the court to determine. And I'm submitting it to the jury on an advisory basis and I'll consider their verdict in determining whether front pay should be awarded and to what extent.

See Transcript (Day 5, Morning) (document no. 152), at 158. Nevertheless, the court is satisfied that, based upon all prior discussions regarding jury instructions to be given, all counsel understood, or should have understood, that the court's view was that front pay is an equitable remedy for the court to decide, and that plaintiff's "front pay" claim as to all liability theories was being given to the jury only on an advisory basis.

generous award of compensatory damages, and concluded that "an award of front pay in the amount of $111,591.00 is near the outer boundary of reasonableness in this case." First Post-Trial Order, at 14. That sum represented three years of front pay, which the court concluded was "more than adequate time for a person of McPadden's age, skill, and training to obtain a pharmacist position at a salary and with benefits comparable to those she received at Walmart." Id.[3]

McPadden now moves the court to reconsider the latter aspect of its order, asserting that the court made two manifest errors of law. First, she says the question of whether to award front pay (and, if so, how much) on her state law claims was a jury question, protected by both New Hampshire law and the Seventh Amendment to the United States Constitution. Accordingly, says McPadden, the court erred by deciding the front pay issue with regard to her state claims. Instead, she says, the court should have accepted the verdict on "front pay" as binding (and, if appropriate, applied remittitur standards to effect any reduction). Second, McPadden asserts that Walmart

---

[3] Parenthetically, the court notes that neither party suggested that reinstatement of McPadden to her former (or a comparable) job was a realistic option and both parties treated the prospect as unworkable. Accordingly, the court followed suit.

4

waived its right to "challenge the jury trial by way of advisory jury proceedings when it failed to file a timely motion pursuant to Fed. R. Civ. P. 52(b)" to amend the judgment. Plaintiff's Motion for Partial Reconsideration (document no. 190) at 1.

Turning first to McPadden's "waiver" theory, her argument seems to go something like this: Following the jury's verdict, the clerk of court entered judgment (document no. 140) on that verdict "in the total amount of $16,522,485.87," which included "Front Pay: $558,392.87." The judgment as entered on the docket failed to note that the jury's verdict on front pay was merely advisory. McPadden seems to argue that absent such clarification, the judgment must be taken as binding with respect to the front pay award. And, she says, because Walmart neglected to file a timely motion under Rule 52(b) to amend the perhaps-misleading judgment, Walmart waived any "right" to an advisory verdict on front pay. The point seems to be that the form of judgment as entered, coupled with Walmart's failure to seek an amendment, converted the advisory verdict into an actual verdict.

The court disagrees. To the extent the judgment neglected to note that the jury's verdict on front pay was advisory only, it "failed to reflect the court's intention" and will be amended

5

accordingly. Companion Health Servs. v. Kurtz, 675 F.3d 75, 87 (1st Cir. 2012) (citation omitted). See generally Fed. R. Civ. P. 60(a). That Walmart did not move the court to amend that judgment is entirely irrelevant.

McPadden's core argument is that the issue of front pay with respect to her state law claims is, under New Hampshire law, one for the jury to resolve and not the court. See, e.g., Plaintiff's Motion for Partial Reconsideration at 3 ("McPadden is entitled to a jury on claims for front pay arising under New Hampshire law."). Consequently, she argues, as to her state law claims, the jury's verdict on front pay was not advisory, but controlling, notwithstanding the court's repeated statements to counsel that it intended to submit the front pay issue on an advisory basis only.

Although it is not entirely clear from McPadden's memorandum, her argument seems to conflate two separate and substantively distinct remedies: "lost future earnings" and "front pay." "Front pay" is well understood in the employment discrimination context. A wrongfully-fired employee is generally entitled to equitable (injunctive) relief in the form of an order reinstating the employee to her prior job. Alternatively, if reinstatement is not feasible, the court may

6

award front pay, as a substitute form of equitable relief (for example, where the employment relationship has deteriorated to the point of being unworkable). Front pay consists of an award of pay for a period of time sufficient to allow the wronged employee an opportunity to obtain similar employment elsewhere. "Front pay," as a substitute for injunctive relief, is no less an equitable remedy than an order of reinstatement. See, e.g., Kramer v. Logan Cty. Sch. Dist. No. R-1, 157 F.3d 620, 626 (8th Cir. 1998) ("[F]ront pay is not so much a monetary award for the salary that the employee would have received but for the discrimination, but rather the monetary equivalent of reinstatement, to be given in situations where reinstatement is impracticable or impossible.") (emphasis supplied). And, because front pay is an equitable remedy, there is no doubt that it lies within the court's discretion - not a jury's - to determine whether such relief is warranted. See, e.g., Lussier v. Runyon, 50 F.3d 1103, 1108 (1st Cir. 1995) ("[F]ront pay, within the employment discrimination universe, is generally equitable in nature. It follows a fortiori from the equitable nature of the remedy that the decision to award or withhold front pay is, at the outset, within the equitable discretion of the trial court.") (citations omitted). See also City of Manchester v. Anton, 106 N.H. 478, 479 (1965) (Kennison, C.J.) ("[F]or many years it has been well settled here that in equity

there is no constitutional right to trial by jury.") (quoting Dion v. Cheshire Mills, 92 N.H. 414, 416 (1943)). It follows, then, that under New Hampshire law front pay is an equitable remedy for the court, not a jury, to award.

"Lost future earnings," on the other hand, is an entirely distinct remedy. While front pay is equitable in nature and is to be used "during the period between judgment and reinstatement or in lieu of reinstatement," Pollard v. E. I. du Pont de Nemours & Co., 532 U.S. 843, 846 (2001), "lost future earnings" are compensatory in nature, not equitable. Recovery of lost future earnings compensates an employee for the effects of an unlawful termination, effects which might include "a lifetime of diminished earnings resulting from the reputational harms . . . suffered as a result of [the employer's] discrimination." Williams v. Pharmacia, Inc., 137 F.3d 944, 953 (7th Cir. 1998). See also Teutscher v. Woodson, 835 F.3d 936, 959 (9th Cir. 2016) (Smith, J. Concurring) (noting that "front pay is the functional equivalent of the equitable remedy of reinstatement. Future lost earnings, on the other hand, are compensatory damages calibrated to actual monetary losses after the date of judgment" and observing that while front pay "pays [the plaintiff] as if he had been reinstated," lost future earnings "encompass reputational harms, loss of experience, and other forward-

8

looking aspects of the injury caused by the discriminatory conduct") (citation omitted).  So, unlike "front pay," "lost future earnings" are a component of compensatory damages, properly decided by a jury.

McPadden confuses those two distinct remedies when, for example, she argues that with respect to her wrongful termination claim, "it is NH practice to have the jury calculate front pay awards."  Plaintiff's Motion for Partial Reconsideration, at 3 (citing Porter v. City of Manchester, 151 N.H. 30, 44 (2004)).  That statement of the law is incorrect and her reliance upon Porter is misplaced.  The Porter court began by holding that a wrongful termination claim is properly characterized under New Hampshire law as a tort.  And, as noted, an award of lost future earnings is compensatory and, therefore, can be recovered in tort as an element of compensatory damages.  Indeed, the employee in Porter sought, literally, "lost future earnings" (not "front pay"), as unmistakably recognized by the New Hampshire Supreme Court.  The court captioned its relevant discussion as "Lost Future Earnings," and wrote:

> Given that we have held that wrongful termination is a cause of action in tort, we conclude that Porter was entitled to submit his claim for lost future earnings to the jury.  In a wrongful termination case, the recovery of lost future earnings will restore the employee as nearly as possible to the position the

>     employee would have been in if the employee had not
>     been wrongfully terminated.  Accordingly, we reject
>     the city's argument that an at-will employee is barred
>     from recovering lost future earnings.

Porter, 151 N.H. at 44-45 (emphasis supplied) (citation omitted).  Porter did not involve, and the New Hampshire Supreme Court did not consider, any issues related to "front pay."  Consequently, the Porter decision is not inconsistent with the general rule, followed in New Hampshire, that equitable remedies (like reinstatement or, alternatively, an award of front pay) are for the court, not a jury.  See generally Anton, 106 N.H. at 479.

In short, then, McPadden's argument that she had a right under state law and/or the United States Constitution to have the jury determine the issue of "front pay" is incorrect.  Moreover, it is inconsistent with both the jury instructions McPadden requested (document no. 104) and the special verdict form she proposed (document no. 105).

On the special verdict form (both as proposed by plaintiff and as actually given by the court), the jury was instructed that if it found in McPadden's favor as to any one or more of her state and/or federal claims, it was to break out, as separate awards, "Front Pay" and "Compensatory Damages."  That

10

is consistent with the recognition that they are distinct remedies (the former having been presented to the jury on an advisory basis). "Lost future earnings," however, are merely one component of compensatory damages. Hence, there was never any need to ask the jury to make a separate award of them. Had McPadden argued to the jury that she was entitled to lost future earnings, any such award would have been included in the jury's award of "compensatory damages."

As to the jury instructions, plaintiff's counsel limited her requests, as well as her argument to the jury on damages, to "front pay." She also made it clear that she understands that "front pay" damages are distinct from, and not a component of, "compensatory damages." See, e.g., Plaintiff's Proposed Jury Instructions, at 32 ("[Y]ou may award compensatory damages, in addition to . . . front pay and benefits.") (emphasis supplied). Plaintiff's counsel did not request an instruction regarding "lost future earnings" as an element of compensatory damages, and she did not argue to the jury that she was entitled to lost future earnings. Instead, she sought only the equitable remedy of "front pay."

Now, after the fact, counsel seems to suggest that, for equitable purposes (she concedes that front pay under Title VII

11

is equitable in nature), the advisory verdict is just that, advisory.  But with respect to her state law "front pay" claims, the verdict should be construed as a controlling award of lost future earnings or compensatory damages, albeit subject to remittitur.  That is to say, she seems to be arguing, at least implicitly, that the same front pay verdict should be taken as both advisory (equitable) as to her federal claim, and binding (compensatory) as to her state claims.

Plaintiff's argument is without merit.  The jury's front pay verdict was advisory because front pay is an equitable remedy, regardless of the legal cause of action; because plaintiff sought only "front pay," and not "lost future earnings"; and because the court gave the front pay claim to the jury exclusively on an advisory basis.

At this point, it probably bears noting that there was nothing unusual about giving the issue of front pay to the jury (on an advisory basis) with respect to all of McPadden's eligible claims.  Front pay is plainly a remedy available in lieu of an injunctive order of reinstatement in state gender discrimination cases.  See N.H. Rev. Stat. Ann. ("RSA") 354-A:21, II(d) and 21-a, I (The Commission for Human Rights may issue an order of reinstatement and a court may award all relief

that could have been awarded by the Commission.).  So, in that regard, front pay (in lieu of reinstatement) is an available equitable remedy.  Similarly, with respect to McPadden's state whistleblower claim, it is clear that front pay is available as an equitable remedy in lieu of an injunctive order of reinstatement.  See RSA 275-E:2, II ("An aggrieved employee may bring a civil suit within 3 years of the alleged violation of this section.  The court may order reinstatement and back pay as well as reasonable attorney fees and costs, to the prevailing party.").  Finally, as to McPadden's common law wrongful discharge tort claim, neither party questions whether "front pay" is available as an additional remedy.  And there is no reason to think that it is not.  See generally Walsh v. Town of Millinocket, 28 A.3d 610 (Me. 2011); Stafford v. Electronic Data Systems Corp., 749 F. Supp. 781 (E.D. Mich. 1990).  In any event, McPadden certainly proceeded on the assumption that front pay is available to a plaintiff claiming to have been wrongfully discharged.

All of this is to say that "front pay" — an alternative equitable remedy in lieu of an order of reinstatement — was an available remedy under each of plaintiff's federal and state theories of recovery.  It was, then, entirely appropriate for the court to give that equitable issue to the jury (on an

advisory basis) with respect to all of McPadden's theories of liability.

As a practical matter, however, all of this is of little moment. Even if McPadden were to prevail on her argument that the jury's advisory front pay verdict could be recast as equitable to the extent it relates to relief in lieu of reinstatement, but compensatory to the extent it relates to an implied claim of "lost future earnings," it is doubtful that she would obtain any real benefit. First, even if treated as an award of "lost future earnings," that aspect of the verdict would be included in the jury's already very generous award of compensatory damages (bringing the total award of compensatory damages to more than $1 million). That, in turn, would have subjected that compensatory damages award to renewed remittitur scrutiny. And a very substantial remittitur would be in order, given the general lack of evidence in the record supporting any claim of lost future earnings (e.g., long-lasting professional reputational injury arising from the circumstances of plaintiff's discharge). See generally Williams, 137 F.3d at 953. See also Hite v. Vermeer Mfg. Co., 361 F. Supp. 2d 935, 947 (S.D. Iowa 2005) (declining to award any lost future earnings because "Plaintiff has not provided competent evidence suggesting that her injuries have narrowed the range of economic

14

opportunities available to her, nor has she shown that [defendant's] retaliation for FMLA usage has caused a diminution in her ability to earn a living . . . [and] offered nothing to support the assertion that her unlawful discharge taints her employment record") (citations and internal punctuation omitted).

Second, if the jury's verdict included "lost future earnings" on McPadden's state law claims, that would meaningfully influence the court's assessment of whether any equitable award of front pay would be justified.  As noted previously, when a compensatory award is adequate to redress plaintiff's injury, the court may exercise its discretion to decline to award equitable relief in the form of front pay.  See First Post-Trial Order, at 14; see also, Carey v. Mt. Desert Island Hosp., 156 F.3d 31, 41 (1st Cir. 1998).  In other words, any additional recovery of "lost future earnings" likely would have been offset by remittitur, the complete elimination of "front pay" damages, or both.

## Conclusion

McPadden is incorrect in asserting that she had a state law and/or constitutionally protected right to have the jury determine entitlement to "front pay" on her state law claims.

15

Front pay is an equitable form of relief.  New Hampshire follows the commonly understood principle that there is no right to a jury trial in equity.  Consequently, the issue of front pay (on <u>all</u> of McPadden's claims) was for the court, not the jury.  And, neither counsel's perceptions or expectations, nor the form of the judgment entered on the verdict, can serve to convert an advisory verdict into a binding one.  Nor can a persistent claim for "front pay" be converted into a claim for "lost future earnings" well after the trial is completed.

As noted in the court's First Post-Trial Order, the jury's award of front pay with respect to all claims was advisory.  While a reasonable award of front pay is supportable in this case, the jury's advisory award of $558,392.87 was plainly excessive under the circumstances.  And, as noted previously, the court awarded McPadden front pay at what it considers "the outer boundary of reasonableness in this case."  <u>Id.</u> at 14.

McPadden's Motion for Partial Reconsideration (document no. 190) is denied.[4]

---

[4]   Plaintiff moves the court to certify a question to the New Hampshire Supreme Court aimed at determining whether "front pay" is an issue for the jury under state law.  As it is clear that front pay is not a jury question,ractically the requested certification is unnecessary and would pose an unwarranted burden on that Court.  The request is denied.

16

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

January 5, 2017

cc: Richard E. Fradette, Esq.
    Robert S. Mantell, Esq.
    Holly A. Stevens, Esq.
    Lauren S. Irwin, Esq.
    Joseph A. Lazazzero, Esq.
    Christopher B. Kaczmarek, Esq.